United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK RUSSO, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>M/T DUBAI STAR, et al.,<br><br>        Defendants.<br>_____/ | No. C 09-05158 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND TO STRIKE PORTIONS OF THE COMPLAINT and DENYING DEFENDANT'S OBJECTIONS AND MOTION TO STRIKE PLAINTIFFS' EXHIBITS IN OPPOSITION TO MOTION TO DISMISS** |

Defendant Pioneer Ship Management Services, LLC's ("Pioneer") motion to dismiss is currently scheduled for hearing on April 30, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court rules as follows.

**BACKGROUND**

This action, brought by three commercial fishermen and a seafood processor on behalf of a putative class of fishermen, vessel owners, seafood processors, and commercial boat charterers, arises out of an oil spill in the San Francisco Bay ("the Bay") on October 30, 2009. According to the complaint, the vessel Dubai Star was moored in the Bay on that day, taking on bunker oil for use in its main engines. First Amended Complaint ("FAC") ¶ 2. Plaintiffs allege that, as a result of negligence on the part of the Dubai Star's owners, operators, charterers, and/or crew,[1] a "substantial amount" of oil spilled into the Bay, impacting commercial fishing and crabbing operations as well as recreational boat

---

[1] Plaintiffs allege that defendant Pioneer is an owner and operator of the vessel. *Id.* ¶ 9.

charter operations. *Id.* ¶¶ 2-3. According to plaintiffs, bunker oil is "an extremely toxic substance" which is "classified as carcinogenic, harmful, and dangerous for the environment." *Id.* ¶ 75. Plaintiffs allege that bunker oil "is significantly more toxic to marine life than the crude oil that was spilled in the Exxon Valdez case" because it is heavier and adheres more strongly to animals' bodies. *Id.* ¶¶ 79-81.

According to the complaint, defendants failed to follow best practices with respect to fueling the vessel. According to plaintiff, best practices include "pre-booming" the vessel, defined as "deploying oil spill recovery booms around a ship prior to taking on fuel." *Id.* ¶¶ 16, 31. Plaintiffs allege that defendants did not deploy oil spill booms until hours after the spill, once a substantial amount of fuel had already leaked into the waters of the Bay. *Id.* ¶ 16.

Plaintiffs bring suit based on the detrimental effects of the spill on their livelihoods. Plaintiffs allege that the spill affected their ability to profit from Dungeness crabs, flat fish (Petrale and English sole, skates, and sand dabs), and herring. *Id.* ¶¶ 90-105. Plaintiffs allege seven causes of action: (1) Mandatory Pre-Booming Program,[2] (2) strict liability, (3) negligence, (4) statutory violations of the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene Act"), Cal. Gov't Code § 8670 *et seq.*, the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"), Cal. Water Code § 13000 *et seq.*, and Cal. Fish & Game Code § 5650 *et seq.*, (5) strict liability under the Lempert-Keene Act, (6) negligence per se, and (7) public nuisance. Plaintiffs seek compensatory damages, various forms of statutory damages, and punitive and exemplary damages.

Presently before the Court is Pioneer's motion to dismiss and to strike portions of the complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff

---

[2] By this cause of action, plaintiffs seek an order declaring that defendants' failure to pre-boom is not a best fueling practice, enjoining defendants from fueling vessels in the Bay without first pre-booming, and requiring defendants to establish a fund to pay for implementation of and education regarding best fueling practices. FAC ¶¶ 30-31.

2

to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.   Motion to Dismiss**

Pioneer moves to dismiss each of plaintiffs' seven causes of action for failure to state a claim. As a preliminary matter, plaintiffs contend that the Court must convert the motion to dismiss into a motion for summary judgment due to Pioneer's submission of evidence outside the pleadings. Oppo. at 2 (citing Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")). It is well-settled, however, that in ruling on a motion to dismiss, the court "may consider materials incorporated into the complaint or matters of public record" without converting the motion into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.32d 1031, 1038 (9th Cir. 2010). In ruling on the present motion, the Court will consider only that evidence which is properly considered at this time, and will exclude all other evidence. The Court therefore declines plaintiffs' invitation to convert the motion to dismiss into a motion for summary judgment.

**A.   Oil Pollution Act of 1990**

Pioneer first asserts that the entire complaint must be dismissed due to plaintiffs' failure to comply with the pre-filing requirement of the Oil Pollution Act of 1990 ("OPA"). OPA requires that "all claims for removal costs or damages . . . be presented first to the responsible party," defined in the case of a vessel as "any person owning, operating, or demise chartering the vessel." 33 U.S.C. §§ 2713(a), § 2701(32). A lawsuit may be commenced only after "a claim is presented . . . and (1) each

3

person to whom the claim is presented denies all liability for the claim, or (2) the claim is not settled by any person by payment within 90 days." *Id.* § 2713(c). Although the Ninth Circuit has not addressed the issue, several other courts have held that OPA's presentment requirement is jurisdictional in nature and mandates dismissal for failure to comply. *See, e.g.*, *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993); *Abundiz v. Explorer Pipeline Co.*, 2003 WL 23096018, at *5 (N.D. Tex. Nov. 25, 2003).

Plaintiffs' Second Cause of Action for strict liability appears to be brought under OPA, although plaintiffs do not expressly identify the basis for the claim. To the extent this cause of action alleges liability under OPA, it must be DISMISSED without prejudice for failure to allege compliance with OPA's presentation requirement.[3] The remainder of plaintiffs' causes of action, however, arise not under OPA but under state law.[4] The presentation requirement does not apply to these claims. *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 565 & n.3 (D. Md. 2000) ("OPA does not preempt . . . state common law actions . . . . [a]nd there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit."); *Isla Corp. v. Sundown Energy, LP*, No. 06-8645, 2007 WL 1240212, at *1-2 (E.D. La. Apr. 27, 2007) (applying OPA presentation requirement only to claims brought under OPA and not to state law claims); *Abundiz v. Explorer Pipeline Co.*, No. 00-2029, 2003 WL 23096018, at *3-4 (N.D. Tex. Nov. 25, 2003) (same); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 844 F. Supp. 1512, 1514-15 (M.D. Fla. 1994) (same). Pioneer's motion to dismiss

---

[3] Plaintiffs have submitted a letter from defense counsel in which counsel stated that Pioneer did not intend to set up a "claims service for submission of fisherman claims similar to what was done in the Cosco Busan matter [a different oil spill case]." Nov. 2, 2009 Letter, Ex. 1 to Oppo. This letter is not appropriate for consideration on a motion to dismiss and will therefore be disregarded. In addition, even if the Court could consider the letter, it would not support plaintiffs' position. Plaintiffs claim that Pioneer "waived" any reliance on OPA's presentation requirement by refusing to set up a special claims service. However, OPA's rules relate to the Court's subject matter jurisdiction and are therefore not subject to waiver. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009) ("Parties cannot waive a court's lack of subject matter jurisdiction.") (quotation marks, citation, and alteration omitted).

[4] OPA does not preempt state laws governing liability and compensation relating to oil spills, such as the claims alleged by plaintiffs in this case. *United States v. Locke*, 529 U.S. 89, 104-06 (2000); *see also Tanguis v. Westchester*, 153 F. Supp. 2d 859, 863 (E.D. La. 2001) (OPA "does not preempt state law in the area of oil spill liability and compensation") (quotation marks and citation omitted).

4

the First and Third through Seventh Causes of Action on this ground is therefore DENIED, and the Court will address Pioneer's specific challenges to each of these causes of action.

### B.     First Cause of Action: "Mandatory Pre-Booming Program"

Plaintiff's First Cause of Action asks the Court to declare that defendants' failure to pre-boom is not a best fueling practice, enjoin defendants from fueling vessels in the Bay without first pre-booming, and require defendants to establish a fund to pay for implementation of and education regarding best fueling practices.

Plaintiffs cite no authority in support of this cause of action. As Pioneer points out, there are both state and federal regulations governing the use of oil spill booms. 33 C.F.R. § 155.1050(d)(1)(i)(A); Cal. Code Regs. tit. 14, § 844. Plaintiffs have not challenged these regulations, nor have they tied their request for a "Mandatory Pre-Booming" order to any claim for which equitable relief might be available. Plaintiffs' First Cause of Action must therefore be DISMISSED with prejudice.

### C.     Third through Sixth Causes of Action

Plaintiffs' Second through Sixth Causes of Action allege negligence, negligence per se, and violations of the California Fish & Game Code, the Lempert-Keene Act, and the Porter-Cologne Act. Pioneer first moves to dismiss any claim brought under the Fish & Game Code and the Porter-Cologne Act because those statutes do not provide a private right of action. *See* Cal. Water Code § 13361(a) ("Every civil action brought under the provisions of this division . . . shall be brought by the Attorney General in the name of the people of the State of California."); Cal. Fish & Game Code § 5650.1(d) ("Every civil action brought under this section shall be brought by the Attorney General . . . or by the district attorney or city attorney in the name of the people of the State of California."). The Court agrees that there is no private right of action under the Porter-Cologne Act or the Fish & Game Code, and DISMISSES plaintiffs' claims under these statutes with prejudice. To the extent plaintiffs' negligence per se claim is grounded in violations of these two statutes, that claim must be DISMISSED with prejudice as well.

5

The elements of plaintiffs' remaining claims are as follows. First, plaintiffs' claim for negligence requires them to plead duty, breach, causation, and damages. *Ortega v. Kmart Corp.*, 36 P.3d 11, 14 (Cal. 2001). To adequately plead causation, a plaintiff must allege that "the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm." *Id.* Second, plaintiffs' claim for strict liability under the Lempert-Keene Act permits the recovery of damages that "arise out of, or are caused by a spill," "without regard to fault" of the vessel owner. Cal. Gov't Code § 8670.56.5(a). Recoverable damages include "[l]oss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources . . . by any claimant who derives at least 25 percent of his or her earnings from the activities that utilize the property or natural resources." *Id.* § 8670.56.5(h)(6). Finally, plaintiffs' claim for negligence per se is grounded in the alleged violation of the Lempert-Keene Act. To state a claim for negligence per se, a plaintiff must allege that "(1) the defendant violated a statute or regulation; (2) the violation caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) the plaintiff was one of the class of persons the statute or regulation was intended to protect." *Daum v. SpineCare Med. Group, Inc.*, 61 Cal. Rptr. 2d 260, 271 (Cal. Ct. App. 1997).

Pioneer asserts that each of these causes of action fails due to plaintiffs' failure to allege causation or a cognizable injury resulting from the oil spill. Plaintiffs state that they are seeking "two kinds of damages: diminution of the price of crab and other seafood in the market area, and damage to the crab and other seafood itself." Oppo. at 5. Pioneer contends that neither of these alleged injuries can support a claim for negligence, negligence per se, or violations of the Lempert-Keene Act.

Pioneer argues that the first category of damages – diminution in the price of crab and other seafood in the local market – is too remote and speculative to support any of plaintiffs' causes of action. Pioneer relies primarily on *Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992), in which the Ninth Circuit held that a class of plaintiffs who purchased gasoline in California after the Exxon Valdez oil spill could not, as a matter of law, establish that the spill was the proximate causation of the increase in gasoline prices following the spill. After noting that "uniformly accepted principles of tort law . . . require a plaintiff to prove more than that the defendant's action triggered a series of other events that

6

led to the alleged injury," the court held that causation could not be established where the complaint identified several intervening acts that occurred after the spill, including the Coast Guard's closure of ports near the spill, the decision of oil refineries to raise prices due to the resulting oil shortage, and the decision of wholesalers and retailers to pass these increased costs on to consumers. *Id.* at 808-08. The Court does not find *Benefiel* to be instructive. Although the Court agrees with Pioneer that plaintiffs must articulate their theory of causation in clearer terms, the Court does not believe that the link between the spill at issue in this case and the alleged reduction in the price of crab is so attenuated as to defeat proximate causation as a matter of law.

With respect to plaintiffs' second claim – that damage to the crab and other seafood has reduced their profits as fishermen and seafood processors – Pioneer argues that the claim fails because plaintiffs have not alleged, and cannot allege, that the spill actually prevented them from fishing. Pioneer notes that plaintiffs do not allege that they actually fish in the areas affected by the spill, or that the spill actually caused any closures of commercial fishing during the applicable seasons. Pioneer also submits evidence of the limited nature and duration of the closures that did occur. *See* ex. 1-7 to Pioneer RJN.

It is true that the claims are less than clear. However, as the Court understands it, the claim is not necessarily that plaintiffs lost profits from the inability to fish during the most recent season, but that plaintiffs will suffer continued losses in the future due to damage to the ecosystem that supports the creatures they catch and process. The Court is not prepared at this time to hold that plaintiffs are unable to state a claim as a matter of law based on the loss of profits due to the detrimental effects of the spill on fish and crabs. Although plaintiffs do not allege that the spill directly affected any areas in which they fish commercially, they do state that the spill brought oil into Dungeness crab "nurseries" – areas where young crabs grow – affecting the present and future dispersion of crabs into commercial crabbing zones. Oppo. at 6. This is a plausible theory of causation and harm.

However, the Court agrees with Pioneer that, in general, plaintiffs' complaint fails to include sufficient detail to support their claims. For example, to the extent plaintiffs' claims are based on loss of fishing profits during the season immediately following the spill, they do not allege sufficient facts regarding the timing and circumstances of any closures, and how these closures actually affected their fishing and crabbing activities. Similarly, to the extent their claims are based on future losses from harm

7

1 to juvenile animals, plaintiffs fail to explain their theory with respect to any animal other than the
2 Dungeness crab. Indeed, although the complaint purports to seek recovery of damages for loss of profits
3 connected with crab, herring, and flat fish, plaintiffs have made no allegations at all concerning the
4 effects of the spill on any animal other than crabs.

5 With the exception of the claims stemming from violations of the California Fish & Game Code
6 and the Porter-Cologne Act, which have been dismissed with prejudice, plaintiffs' Third through Sixth
7 Causes of Action are DISMISSED with leave to amend to clarify the facts concerning the specific
8 effects of the spill on plaintiffs' profits as fishermen and seafood processors.

### D. Seventh Cause of Action: Public Nuisance

Pioneer moves to dismiss plaintiffs' Seventh Cause of Action, for public nuisance, on two grounds: (1) that it is preempted by OPA and the Lempert-Keene Act; and (2) that plaintiffs cannot state a claim for nuisance because the harm is not permanent. Pioneer's first argument lacks merit. As the Court has already explained, OPA does not preempt state law causes of action relating to liability and compensation for oil spills. *Locke*, 529 U.S. at 104-06. Additionally, Pioneer has not cited, and the Court was unable to find, any California authority holding that the state Lempert-Keene Act preempts state law nuisance claims. Accordingly, the Court will turn to Pioneer's arguments on the merits.

Under California law, a nuisance is defined as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." *Id.* § 3480. To state a cause of action for public nuisance, a plaintiff must allege that: "(1) [defendants] created a condition that was harmful to health or . . . interfere[d] with the comfortable enjoyment of life or property; (2) the condition affected a substantial number of people at the same time; (3) an ordinary person would be reasonably annoyed or disturbed by the condition; (4) the seriousness of the harm outweighs the social utility of [defendants'] conduct; (5) [plaintiff did not] consent[] to the conduct; (6) [plaintiff] suffered harm that was different from the type of harm suffered by the general public; and (7)

8

[defendants'] conduct was a substantial factor in causing [plaintiff's] harm." *Birke v. Oakwood Worldwide*, 87 Cal. Rptr. 3d 602, 608 (Cal. Ct. App. 2009).

Pioneer does not specifically argue that plaintiffs have failed to allege any of these elements. Rather, Pioneer contends that plaintiffs' claim must fail because they have not alleged that the nuisance is permanent. However, the case on which Pioneer relies for this proposition does not go quite so far. In that case, *Baker v. Burbank-Glendale-Pasadena Airport Authority*, 705 P.2d 866 (Cal. 1985), the California Supreme Court discussed the different remedies and statutes of limitations applicable to causes of action for "permanent" and "continuing" nuisances, the latter being forms of nuisance that are by nature impermanent and abatable by the defendant. *Id.* at 297-98. Contrary to Pioneer's assertion, the court did not hold that a nuisance must be permanent in order to be actionable. Rather, the court simply held that a plaintiff bringing suit with respect to a public nuisance that is impermanent is limited to damages suffered as of the time of suit, and may not recover any prospective damages. *Id.* at 869.

The Court believes that plaintiffs have adequately pled the first six elements of a cause of action for public nuisance. With respect to the seventh element, however, the Court reiterates its prior conclusion that plaintiffs have not sufficiently alleged causation with respect to any harm they had incurred as of the time of bringing suit and therefore DISMISSES the claim. Although the Court doubts that plaintiffs will be able to remedy this defect, given that they filed the complaint on the very same day as the spill, the Court will grant plaintiffs leave to amend.

## II.     Motion to Strike

Pioneer also moves to strike various portions of the FAC. Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A Rule 12(f) motion may be used to strike a prayer for relief when the damages sought are not recoverable as a matter of law." *Wells v. Bd. of Trustees of Cal. State Univ.*, 393 F. Supp. 2d 990, 994 (N.D. Cal. 2005).

First, Pioneer moves to strike the reference to "commercial charterers vessel operators" in Paragraph 6 of the FAC. Pioneer points out that although plaintiffs purport to represent a class that includes commercial boat charterers, the named plaintiffs are fishermen and a seafood processor and

9

therefore cannot represent a class that includes "commercial charterers vessel operators." In addition, Pioneer points out that with the exception of the reference in Paragraph 6, the entire complaint pertains to lost profits due to effects on fishing. The Court agrees with Pioneer that the reference in Paragraph 6 is impertinent, and GRANTS the motion to strike the reference to commercial operators.

Second, Pioneer moves to strike a copy of a letter to Governor Schwarzenegger from various environmental advocacy groups, which appears on pages 8-10 of the FAC, on the ground the letter is irrelevant and contains argument and misstatements of law and fact. In opposing the motion, plaintiffs contend that the letter is "relevant on the issue of whether or not the Dubai Star, its owners operators and managers, adhered to best practices as viewed by members of the maritime community." Oppo. at 9. The Court agrees that the letter may have some relevance in proving plaintiffs' negligence claim, and DENIES the motion to strike.

Third, Pioneer moves to strike Paragraphs 46-48, 50, and 52 on the ground they are unintelligible, misquote statutory authority or refer to nonexistent statutory sections. The Court DENIES the motion as to Paragraphs 46, 48, 50, and 52, which contain only minor errors, and GRANTS the motion as to Paragraph 47, which refers to a nonexistent section of the statute.

Pioneer next moves to dismiss certain specific allegations in the complaint. Pioneer's motion to strike Paragraph 56, which seeks compensatory damages, is GRANTED to the extent it seeks to include something other than lost profits or any other damages recoverable under California Government Code § 8670.56.5(h). Pioneer's motion to strike Paragraph 57 on the ground it fails to allege fraud with sufficient particularity is GRANTED on grounds of immateriality, as plaintiffs have not stated a claim for fraud. Pioneer's motion to strike Paragraphs 70-72 on the ground they have no relation to plaintiffs' claim for public nuisance is DENIED. Although the Court agrees that these allegations do not relate to plaintiffs' nuisance claim, the Court declines to strike the allegations on the ground they appear to belong to plaintiffs' claim for negligence per se. Pioneer's motion to strike Paragraphs 74-105, which contain a general discussion of the toxicity of fuel oil and its effects on marine life, is DENIED.

Additionally, Pioneer moves to strike a number of plaintiffs' requests for relief. The Court rules as follows with respect to each challenged request:

Request B ("Pre-Booming Program"): GRANTED.

Request F (restitution and disgorgement): GRANTED.

Request J (arrest of the Dubai Star): GRANTED without prejudice to re-pleading if the vessel returns to the Court's jurisdiction. *See* Suppl. Rules for Certain Admiralty and Maritime Claims C(2)(c).

Request K (deem plaintiffs' claims to be "valid maritime claims against the Defendant Vessel, with priority over all other interests, claims or liens"): GRANTED. *See* Maritime Lien Act, 46 U.S.C. § 31301 *et seq.*

Request L (condemnation and sale of the Dubai Star to satisfy the judgment): GRANTED without prejudice to re-filing if the vessel is arrested.

Request O and Paragraphs 57, 64, and 73 (punitive damages): DENIED. Pioneer asks the Court to strike plaintiffs' request for punitive damages on the ground plaintiffs cannot recover punitive damages without showing any pecuniary damage. Pioneer's request is premature.[5]

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendant's motion to dismiss (Docket No. 27) and DENIES defendant's motion to strike (Docket No. 38). Plaintiffs' amended complaint shall be filed no later than **May 21, 2010.**

**IT IS SO ORDERED.**

Dated: April 29, 2010

SUSAN ILLSTON
United States District Judge

---

[5] Pioneer also objects to and moves to strike the majority of the exhibits submitted by plaintiffs in support of their opposition. Pioneer's motion is DENIED. The exhibits were not considered by the Court in ruling on the motion to dismiss.

11